# Smith *v.* J. B. Moors & Company, Appellant.

*Equity—Equitable assets—Distribution among creditors—Equality is equity—Mingling of goods.*

It is a general rule that equitable assets shall be distributed equally and pari passu among all the creditors without any reference to the priority or dignity of the debt; for the courts of equity regard all debts in conscience as equal jure naturali, and equally entitled to be paid; and here they follow their own favorite maxim that equality is equity. And if the fund falls short, all the creditors are required to abate in proportion.

Where a pledgee of goods belonging to different persons, or upon which different persons have liens, mixes the proceeds of the sale of the goods so that it is impossible to identify any specific part of the money as having been derived from any specific goods, a court of equity will not prefer one claimant over another, but if there is a deficiency all will be required to abate in proportion.

Argued March 26, 1906. Appeal, No. 104, Jan. T., 1906, by J. B. Moors & Company, from order of C. P. No. 2, Phila. Co., Sept. T., 1899, No. 792, dismissing exceptions to referee's report in case of C. Shillard Smith et al., trading as Philip Jagode & Company, v. Joseph B. Moors and Arthur W. Moors, trading as J. B. Moors & Company et al. Before MITCHELL, C. J., FELL, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to report of H. Gordon McCouch, Esq., referee.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to report of referee.

*Joseph de F. Junkin*, for appellant, cited: Duplex Printing Press Co. v. Clipper Pub. Co., 213 Pa. 207.

*V. Gilpin Robinson*, for appellee, cited : Parshall v. Eggert, 54. N. Y. 18.

OPINION BY MR. JUSTICE POTTER, May 24, 1906 :

In the table of distribution prepared by the referee in this case he divided the balance of the fund remaining in the hands

of Jagode & Company, after payment of their advances and factor's costs, between the Tradesmen's National Bank and J. B. Moors & Company in proportion to their respective claims. To this distribution Moors & Company excepted, claiming that they were entitled to payment in full before anything should be paid to the bank. These exceptions were overruled by the court, and the final decree was entered in accordance with the report of the referee, from which Moors & Company have taken this appeal. The claim of Moors & Company is that as they were the actual owners of the 127 bales of wool wrongfully pledged by the Keen-Sutterle Company, and sold by the pledgee, their equity to be reimbursed out of the fund is higher than that of the bank, which at the most had only an equitable lien upon the 183 bales represented by the supposed warehouse receipts. It is further contended that the bank had no title or interest in the wool, the papers given it not being warehouse receipts, and the wool never having been in its possession. The referee finds as a fact that the 127 bales of wool belonged to Moors & Company, and 183 bales of those claimed by the bank by virtue of the alleged warehouse receipts, were among the wool pledged to and sold by Jagode & Company, and the proceeds of their sale was part of the fund from which the present balance arises. There was no separate account of the sales. In considering the facts of the transaction we are not able to recognize any superior equity in favor of these appellants. They were bankers, and as such made advances to Keen-Sutterle Company for the purchase of wool. They took as security trust certificates, but it seems that Keen-Sutterle Company were authorized to sell the wool for the account of Moors & Company, and were to turn over the proceeds in payment of the advances. Keen-Sutterle Company committed a fraud upon Moors & Company by pledging the wool to Jagode & Company for borrowed money. The Tradesmen's National Bank likewise loaned its money to Keen-Sutterle Company upon the credit of what it supposed to be genuine warehouse certificates, and this wool was also pledged by Keen-Sutterle Company to Jagode & Company. Without going further into the details of the transaction as they are fully set forth in Tradesmen's Nat. Bank v. Jagode, 186 Pa. 556, and in Moors v. Jagode, 195 Pa. 163, it is sufficient to say that we find no

substantial reason for holding that these appellants are entitled to be preferred as against the bank, in the distribution of the fund in the hands of Jagode & Company. We think that sufficient authority for this conclusion is to be found in the principles set forth in Thompson's Appeal, 22 Pa. 16, and the line of cases which have followed it. A general statement of the same principle is found in 1 Story's Eq. Jur. (13th ed.) sec. 554, where in treating of administration it is said : " It is a general rule that equitable assets shall be distributed equally and pari passu among all the creditors without any reference to the priority or dignity of the debt ; for the courts of equity regard all debts in conscience as equal jure naturalli, and equally entitled to be paid ; and here they follow their own favorite maxim that equality is equity. And if the fund falls short, all the creditors are required to abate in proportion."

It appears in the present case that the pledgees mixed the proceeds of the wool of the Keen-Sutterle Company, that of Moors & Company, and that upon which the Tradesmen's National Bank had a claim, so that it is impossible to identify any specific part of the money in their hands as having been derived from the goods of Moors & Company. Under this state of facts, as the fund resulting from these mingled assets is insufficient to pay both claimants in full, it seems to us that they were very properly required to abate in proportion to the amounts of their respective claims.

The assignments of error are not sustained, and the appeal is dismissed.